[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION.
Plaintiff-appellant Paige Harper appeals the trial court's entry of summary judgment for defendants-appellees Salomon Smith Barney ("Smith Barney"), William Belmont, and Robert and Eleanor O'Brien on her claim for civil conspiracy.
 FACTS AND PROCEEDINGS
The alleged conspiracy had its roots in the divorce of Harper and her former husband, Daniel O'Brien, which O'Brien initiated in 1995. During the divorce proceedings, Harper came to believe that O'Brien had transferred marital funds to his parents, Robert and Eleanor O'Brien ("the senior O'Briens") in an attempt to deprive her of a fair and equitable division of marital property. Harper also believed that the senior O'Briens had placed the marital funds in an account at Smith Barney. Consequently, Harper pursued a claim in the domestic relations court against the senior O'Briens and Smith Barney in which she sought injunctive relief to prevent them from further transferring the funds.
Approximately two years later, after substantial discovery relating to the Smith Barney account and O'Brien's transfer of funds to his parents, Harper filed a tort action against O'Brien, the senior O'Briens, Smith Barney, and William Belmont (a former Smith Barney employee) in the common pleas court. Harper's complaint set forth a claim for civil conspiracy,[1] alleging that the defendants had "willfully and with the intent to deceive and defraud [her] conspired and colluded together * * * to defeat [her] in her claim for a rightful division of marital property * * *."[2]
Shortly thereafter, Harper and O'Brien settled their divorce action by entering into a separation agreement. In addition, Harper voluntarily dismissed her domestic relations claim against the senior O'Briens and Smith Barney.
The separation agreement entered into by Harper and O'Brien included a property settlement, as well as the following language relating to Harper's pending tort action:
 Settlement. The purpose of this Separation Agreement is to settle, release and compromise any and all disputes, and any claims, or causes of action between the parties except as otherwise set forth or reserved herein. Wife hereby reserves her claim against Husband as set forth in lawsuit captioned Paige A. Harper, v. Smith Barney, Inc., et al. * * *. However, Wife agrees to dismiss Husband from the action pursuant to Civil Rule 41(A)(1) and not to seek further claim in that litigation against Husband unless the Court determines that Husband is a party who must be joined in the action or is otherwise necessary to the action. However, should Wife be required to join Husband as a party, Wife shall not seek more than one dollar ($1.00) in damages from Husband. This Mutual Release shall not inure to the benefit of Smith Barney, Inc. or any of its present or former employees.
Before the trial court approved the separation agreement, it engaged in the following colloquy with Harper:
 Q. You signed a separation agreement in this case providing for a division of the assets and liabilities of this marriage and the custody of the child; is that correct?
A. That's correct.
 Q. In making that separation agreement was there full and complete disclosure of all the assets and liabilities to you?
A. Yes.
 Q. And you are satisfied that the terms of that separation agreement are fair to you and fair to your child.
A. Yes.
Thereafter, the trial court approved the separation agreement and incorporated it in the divorce decree.
In December 1998, Harper filed an amended complaint in the tort action that dismissed O'Brien as a defendant. The remaining defendants, the senior O'Briens, Smith Barney, and William Belmont, moved for summary judgment on Harper's civil-conspiracy claim. After hearing argument, the trial court granted their motions.
In this appeal, Harper raises one assignment of error in which she asserts that the trial court erred in granting the motions for summary judgment. Because we conclude that judgment was appropriately entered as a matter of law, we overrule the assignment.
 ANALYSIS
Summary judgment shall be granted if the trial court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines that (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion.[3]
In reviewing the propriety of summary judgment, an appellate court independently examines the record to determine whether the trial court was entitled to enter judgment as a matter of law. In answering this legal question, the reviewing court should afford no deference to the decision of the trial court.[4]
Harper asserted a claim of civil conspiracy, which is "`a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'"[5] A claim for civil conspiracy is dependent upon an underlying unlawful act that is actionable in the absence of a conspiracy.[6] Although it is not entirely clear, it appears that Harper alleged fraud as the underlying unlawful act in this case.
Damage (or injury) is an essential element of both civil conspiracy and fraud.[7] Harper asserted that the defendants' actions damaged her by depriving her of a fair and equitable division of property in her divorce action. As we have previously detailed, however, Harper had acknowledged under oath in the domestic relations court that she believed the property settlement was fair and equitable. Furthermore, it is undisputed that Harper made this acknowledgment with full knowledge of the facts and circumstances upon which her claim for civil conspiracy was based. Having previously testified that her divorce settlement was fair and equitable, Harper is precluded from arguing to the contrary now.[8]
Relying on language in the separation agreement that expressly reserved the conspiracy claim, Harper nonetheless argues that her settlement of the divorce action (and her acknowledgment of its fairness) should not be held to bar the claim. Although it is true that Harper was not precluded from pursuing her claim for civil conspiracy, it is also true that she could not, in litigating the claim, take a position that was inconsistent with the position that she took in the domestic relations action.
Insofar as Harper was precluded from arguing that her divorce settlement was inequitable or unfair, she was unable to offer proof of an essential element of her claim for civil conspiracy, i.e., damages. Consequently, her claim failed as a matter of law, and the trial court properly entered summary judgment against her. The assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
 Doan, P.J., Sundermann and Winkler, JJ.
[1] Harper also asserted a claim of insider trading against William Belmont. That claim was subsequently dismissed pursuant to Civ.R. 12(B)(6) and is not relevant to this appeal.
[2] Harper's claim against Smith Barney was based on the theory of respondeat superior.
[3] Civ.R. 56(C).
[4] Morehead v. Conley (1991), 75 Ohio App.3d 409, 599 N.E.2d 786.
[5] Kenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415,419, 650 N.E.2d 863, 866, quoting LeFort v. Century 21-Maitland RealtyCo. (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645.
[6] Gosden v. Louis (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481,496, cited with approval in Williams v. Aetna Finance Co. (1998),83 Ohio St.3d 464, 475, 700 N.E.2d 859, 868.
[7] See Kenty, supra; Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
[8] See Teledyne Indus., Inc. v. Natl. Labor Relations Bd. (C.A.6, 1990), 911 F.2d 1214 (setting out doctrine of judicial estoppel);Griffith v. Wal-Mart Stores, Inc. (C.A.6, 1998), 135 F.3d 376; Smith v.Dillard Department Stores, Inc. (Apr. 13, 2000), Cuyahoga App. No. 74782, unreported.